# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

GENARO GONZALES                             CIVIL ACTION

VERSUS                                        NO. 11-1846

N. BURL CAIN, WARDEN                SECTION "N"(2)

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary. See 28 U.S.C. § 2254(e)(2).[1] For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE.**

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I. FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Genaro Gonzales,[2] is a convicted inmate currently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[3] Gonzales was charged by bill of information in Orleans Parish on May 18, 2005, with attempted second degree murder. The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case as follows:

> The victim, Camille Tarver ("Tarver"), received three stab wounds, one of which was described as life threatening. The life threatening wound was just below her breast bone and was so large that her liver and stomach could be seen at the base of the wound. The other wounds were on her hand and thigh.
>
> Todd Belott, M.D., who performed surgery on Tarver, testified that substantial force is required to penetrate all of the layers of the abdomen. Here, in addition to all of the layers being penetrated, the knife also penetrated the back wall of her stomach and injured her pancreas and liver. A major artery was severed, and Dr. Belott opined that Tarver probably would have died from hemorrhaging had she not been taken timely to the hospital. He additionally felt that the large size of the wound was caused by repeated stabbing in the area.
>
> Tarver testified that she and Gonzalez dated for a few months and that she broke up with him in the early part of December 2004. In January 2005, she was working two separate jobs. On 9 January 2005, Ms. Tarver was waiting for the streetcar after leaving her job at Money Mart on Canal Street in New Orleans when Gonzalez approached her to talk. He upset her, and when the streetcar came, she just turned around and boarded the Canal Street streetcar, leaving him behind. She was heading to her second job at Haagen-Dazs in the French Quarter where her shift began at 8:00

---

[2]The petitioner's name was spelled "Gonzalez" throughout the state court proceedings. The name is also spelled differently in some of the state court opinions.

[3]Rec. Doc. No. 1.

2

p.m. and ended at 12:00 a.m. She boarded the Canal Street streetcar to head home, and she exited the streetcar at Jefferson Davis Parkway. Tarver was walking along her usual route to her home that was located on Orleans Avenue when Gonzalez jumped from behind some bushes and attacked her. She was thrown to the ground with him on top of her. Tarver stated that the defendant appeared very angry. Initially, she thought that he was going to rape her and then she saw the knife. He stabbed her. She believed that he was trying to kill her. Tarver was able to push him and the knife away from her, and she ran into the street screaming. She could see that she was covered in blood. A car stopped, and Tarver jumped into the car and told the male driving that the defendant had just stabbed her. The man took her to Lindy Boggs Hospital where she was attended by Dr. Belott. Prior to her surgery, she spoke to a police officer, giving the officer Gonzalez's name and address. Tarver also informed the officer that Gonzalez had family in New York.

Sergeant Christian Hart of the New Orleans Police Department went to the address given by Tarver and verified through the landlord that Gonzalez lived at that address. He was not at home at the time; hence, the sergeant secured a search warrant that was executed on 11 January 2005. Upon entering the apartment, the sergeant observed that the apartment looked as if no one lived there. He found only debris and some paperwork. Among the paperwork was Gonzalez's Honduran passport, social security card, and resident alien card. The sergeant did not find a knife or the towel that he allegedly wore around his neck during the attack. After seizing the identifications, Sergeant Hart obtained a warrant for Gonzalez's arrest and issued a bulletin regarding the warrant to all other law enforcement agencies.

(footnotes omitted) State v. Gonzalez, 973 So.2d 115, 115-16 (La. App. 4th Cir. 2007);

State Record Volume 4 of 7, Louisiana Fourth Circuit Court of Appeal Opinion, 2007-

KA-0532, November 28, 2007.

Gonzales was tried before a jury on November 8, 2006, and was found guilty as charged.[4] The state trial court sentenced him on November 20, 2006, to 40 years in prison without benefit of parole, probation, suspension of sentence or diminution of sentence.[5] The court also denied Gonzales's motion to reconsider that sentence.[6]

On direct appeal, Gonzales' counsel argued that the trial court erred in not having a qualified interpreter at trial.[7] Counsel also requested a review for errors patent on the face of the record. On November 28, 2007, the Louisiana Fourth Circuit affirmed the conviction finding no merit to the first issue.[8] On its review for errors patent, the court amended the sentence to remove the prohibition for diminution of sentence by good-time credits.

On December 24, 2007, Gonzales's counsel submitted a timely writ application to the Louisiana Supreme Court seeking review of the appeal.[9] After receiving a per

---

[4]St. Rec. Vol. 1 of 7, Trial Minutes, 11/8/06; St. Rec. Vol. 2 of 7, Verdict Form, 11/8/06; St. Rec. Vol. 4 of 7, Trial Transcript, 11/8/06.

[5]St. Rec. Vol. 1 of 7, Sentencing Minutes, 11/20/06; St. Rec. Vol. 6 of 7, Sentencing Transcript, 11/20/06.

[6]Id.

[7]St. Rec. Vol. 4 of 7, Appeal Brief, 2007-KA-0532, 5/21/07.

[8]State v. Gonzalez, 973 So.2d at 115; St. Rec. Vol. 4 of 7, 4th Circuit Opinion, 2007-KA-0532, 11/28/07.

[9]St. Rec. Vol. 5 of 7, La. S. Ct. Writ Application, 07-K-2467, 12/26/07 (postmarked 1/24/07); St. Rec. Vol. 4 of 7, La. S. Ct. Letter, 2007-K-2467, 12/27/07 (showing filing on 12/26/07 and postmark on 12/24/07).

curiam order from the state trial court to address the adequacy of the interpreter,[10] the Louisiana Supreme Court denied the writ application without stated reasons on June 20, 2008.[11] The court also later denied without stated reasons Gonzales's pro se request for reconsideration on September 19, 2008.[12]

Gonzales's conviction became final 90 days later, on December 18, 2008, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); Wilson v. Cain, 564 F.3d 702 (5th Cir. 2009) (timely filed motion for rehearing must be considered in determining the finality of a conviction).

On November 4, 2009, Gonzales submitted an application for post-conviction relief in the state trial court asserting five grounds for relief:[13] (1) There was insufficient

---

[10]St. Rec. Vol. 2 of 7, Per Curiam Order, 6/5/08.

[11]State v. Gonzalez, 983 So.2d 1271 (La. 2008); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2007-K-2467, 6/20/08. The opinion indicates that two of the justices would have granted the writ.

[12]State v. Gonzalez, 992 So.2d 958 (La. 2008); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2007-K-2467, 9/19/08.

[13]St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief, 11/23/09 (dated 11/4/09) (incomplete copy); Cover Letter, 11/23/09 (dated 11/4/09). The record also contains an identical copy of the application which bears a file date of January 9, 2009, and a signature date of January 12, 2009. St. Rec. 3 of 7, Application for Post-Conviction Relief, 1/15/09 (dated 1/12/09); Cover Letter, 1/15/09 (dated 1/12/09). Neither the petitioner nor the State make mention of this application. The record does not indicate a resolve to the application.

evidence to support the verdict. (2) He was denied due process and a fair trial because the victim was allowed to testify wearing her military uniform. (3) He was denied due process and equal protection of the law because he was denied a qualified language interpreter at trial. (4)(a) Trial counsel provided ineffective assistance for failure to object to the victim testifying in her uniform and failure to have the interpreter qualified and placed under oath, and (b) Appellate counsel was ineffective for failure to point to specific instances of error or problems in the translations by the interpreter. (5) The sentence is unconstitutionally excessive.

After receiving no ruling from the state trial court, Gonzales filed an application with the Louisiana Fourth Circuit seeking review of his post-conviction application and related motions.[14] The court granted the writ and instructed the trial court to rule on his pending application and related motions.[15]

On March 16, 2010, the state trial court issued an order denying Gonzales's application for post-conviction relief, finding no merit to the claims raised.[16] The Louisiana Fourth Circuit denied Gonzales's subsequent writ application on April 23,

---

[14]St. Rec. Vol. 6 to 7, 4th Cir. Writ Application, 2010-K-0239, 2/18/10 (dated 2/11/10).

[15]St. Rec. Vol. 6 of 7, 4th Cir. Order, 2010-K-0239, 3/9/10.

[16]St. Rec. Vol. 2 of 7, Trial Court Judgment, 3/16/10.

2010, finding no error in the trial court's judgment.[17] The Louisiana Supreme Court denied Gonzales's related writ application without stated reasons on May 27, 2011.[18]

## II.   FEDERAL HABEAS PETITION

On August 3, 2011, the clerk of this court filed Gonzales's petition for federal habeas corpus relief in which he asserts five (5) grounds for relief:[19] (1) The state courts' adjudication of the insufficient evidence claim resulted in a decision that was contrary to Jackson v. Virginia, thereby denying him due process and equal protection of the law. (2) The state courts' adjudication of the claim challenging the victim's appearance in a military uniform was contrary to Supreme Court law. (3) The state courts' adjudication of the claim regarding denial of a qualified interpreter denied him due process and was contrary to Supreme Court law. (4) The state courts' adjudication of the ineffective assistance of counsel claim was contrary to or an unreasonable application of the Supreme Court decision in Strickland v. Washington. (5) The state courts' adjudication of the excessive sentence claim was contrary to Supreme Court law.

---

[17]St. Rec. Vol. 7 of 7, 4th Cir. Order, 2010-K-0531, 4/23/10; 4th Cir. Writ Application, 2010-K-0531, 4/14/10 (dated 4/6/10).

[18]State ex rel. Gonzales v. State, 63 So.3d 990 (La. 2011); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2010-KH-1200, 5/27/11; La. S. Ct. Writ Application, 10-KH-1200, 5/26/10 (dated 5/17/10); St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 2010-KH-1200, 5/26/10 (showing postmark of 5/18/10).

[19]Rec. Doc. No. 1-1, p.7.

The State filed a response in opposition to Gonzales's petition conceding timeliness and exhaustion.[20] Nevertheless, the State argues that Gonzales's fifth claim, unconstitutionally excessive sentence, was never raised in the state courts and is now in procedural default because of the failure to exhaust. The State further argues that Gonzales's first four claims are without merit and relief should therefore be denied.

III.    GENERAL STANDARDS OF REVIEW

The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date. Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)). The AEDPA therefore applies to Gonzales's petition, which, for reasons discussed below, is deemed filed in this federal court on June 28, 2011.[22]

_____

[20]Rec. Doc. No. 11.

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995). Gonzales's petition was filed by the clerk of this court on August 3, 2011, when pauper status was granted. Gonzales dated the signature on the memorandum in support of his petition on June 28, 2011. This is the earliest date on which he could have delivered the set of pleadings to prison officials for mailing.

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Gonzales's fifth claim, excessive sentence, is in procedural default for failure to exhaust, having never been raised to the state courts. However, my review of Gonzales's state court application for post-conviction relief, his subsequent writ application to the Louisiana Fourth Circuit, and the related writ application to the Louisiana Supreme Court reflects that the claim raised here is identical to the arguments he raised in each of those pleadings to the state courts. While Gonzales may caption the claim differently in each pleading, the substantive argument is the same. The State's defense is therefore rejected, and I will consider the merits of all of Gonzales's claims.

IV.   SUFFICIENCY OF THE EVIDENCE

Gonzales argues, in a wholly conclusive statement, that the evidence did not establish beyond a reasonable doubt that he was guilty of intentionally attempting to kill Tarver, because the elements of second degree murder were never demonstrated.[23] He raised this claim for the first time in his application in state court for post-conviction

---

[23]Rec. Doc. No. 1, p. 28.

review. The trial court denied relief, finding the claim without merit, and provided no further explanation for the ruling. The Louisiana Fourth Circuit and the Louisiana Supreme Court also denied relief without further comment.

Under Jackson v. Virginia, 443 U.S. 307 (1979), this court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir. 2011). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U.S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, __ U.S. __, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court is to consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial.") (quoting Jackson, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. United States v. Young, 107 Fed.

10

Appx. 442, 443 (5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993); see also Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. Alexander, 775 F.2d at 598. In addition, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. Perez, 529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995). Therefore, this court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Gonzales was charged with and convicted of attempted second degree murder. Louisiana defines "attempt" in La. Rev. Stat. Ann. § 14:27:

A.    Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the

11

accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.

B.     (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

. . .

C.     An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.

The underlying crime in Gonzales's case was second degree murder, which is defined in relevant part by Louisiana law as "the killing of a human being . . .When the offender has a specific intent to kill or to inflict great bodily harm." La. Rev. Stat. Ann. § 14:30.1(A)(1). The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act." La. Rev. Stat. Ann. § 14:10(1). Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the defendant and the circumstances surrounding those actions. State v. Sharlhorne, 554 So.2d 1317, 1321 (La. App. 1st Cir. 1989); State v. Tate, 851 So.2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So.2d 714, 717 (La. 1987)).

Under Louisiana law, specific intent to inflict great bodily harm is not alone enough to support a conviction for attempted second degree murder. State v. Butler, 322

So.2d 189 (La. 1975); State v. Collins, 43 So.3d 244, 251 (La. App. 1st Cir. 2010) ("To be guilty of attempted second degree murder, a defendant must have the specific intent to kill and not merely the specific intent to inflict great bodily harm."). Specific intent to kill can be implied by the intentional use of a deadly weapon, such as a knife or a gun. State v. Collins, 43 So.3d at 251 (citing State v. Brunet, 674 So.2d 344, 349 (1996)).

At trial, the jury heard the testimony of the victim. She testified that she dated Gonzales for a few months before they broke up around December 5, 2004.[24] She further testified that, on January 8, 2005, she worked at a check cashing business on Canal Street at Galvez Street from 9:00 a.m. until about 7:15 p.m.[25] She then reported to her second job at Haagen-Dazs Ice Cream on St. Peter Street in the French Quarter from 8:00 p.m. to 12:15 a.m. on January 9, 2005.

As she left her first job and was waiting for the streetcar, Gonzales approached her to have a conversation.[26] The conversation was civil, but she was upset and got on the streetcar when it arrived. After her shift at the ice cream store ended, she took the streetcar to Jefferson Davis Avenue to begin her walk to her home on Orleans Avenue.

---

[24] St. Rec. Vol. 4 of 7, Trial Transcript, p. 31, 11/8/06.

[25] Id., pp. 30-31.

[26] Id., p. 32.

13

As she made this walk, Gonzales jumped out of the bushes and scared her.[27] He pushed at her and then knocked her down, and she saw the knife in his hand.[28] She saw blood on the knife but did not realize that she had been stabbed. She tried to shield herself with her left hand, which was cut, and tried to push him away with her right hand. She was able to get up, and she started to run. She felt something on her leg, and when she looked down, she saw that she was covered with blood.[29]

Tarver looked back and saw Gonzales standing there with the knife in his hand and a towel around his neck.[30] She made her way to a car nearby and got in with the stranger who was driving. Recognizing that she had just been stabbed, the man drove her to the hospital. While awaiting surgery, she told police that Gonzales had stabbed her.[31] The police had already located the scene of the stabbing, because of the food and the book Tarver dropped during the attack.

---

[27]Id., p. 33.

[28]Id., pp. 33-34.

[29]Id., pp. 34-35.

[30]Id., p. 35.

[31]Sergeant Christian Hart also testified that Tarver told him at the hospital that Gonzales had stabbed her. Id., p. 46.

The jury also heard the testimony of Dr. Todd Belott, an expert in general surgery.[32] He testified that Tarver received three stab wounds, one to the left hand, one to the right thigh and one to the abdomen below the breast bone.[33] The last wound was life threatening and was so severe that the emergency room physician kept his hand inside to control the bleeding.[34] The doctor could see that there was arterial bleeding from the wound, and he could see the stomach and liver through the large opening of the wound.[35] He testified that "it requires a significant amount of force for a knife to penetrate all layers of the abdomen" as this wound had done.[36] The doctor performed immediate surgery to tie off the bleeding major artery and repaired cuts in both the front and back walls of the stomach, the pancreas, and the liver.[37] The doctor indicated that any one of her wounds was could have caused life threatening hemorrhaging or infection. Based on the chest wound, Dr. Belott believed that the size of the wound indicated that the perpetrator attempted to force the knife into the same location more than once.[38]

---

[32]Id., pp. 15, 18.

[33]Id., p. 19.

[34]Id., p. 20.

[35]Id.

[36]Id.

[37]Id., p. 21.

[38]Id., p. 24.

The jury obviously found credible the evidence demonstrating that, Gonzales, as identified by Tarver, hid in wait for her and repeatedly attacked her with a knife. Gonzales's use of the knife with extreme force caused life threatening injuries to Tarver. He used enough force to penetrate the layers of her abdomen, severing a major artery and cutting into her stomach, pancreas, and liver, all of which required immediate surgery to repair. This was in addition to the knife wound to her left hand and her right thigh.

This evidence was more than sufficient for a reasonable jury to conclude that Gonzales acted with specific intent to kill and to support the verdict of attempted second degree murder. The state courts' denial of relief on Gonzales's claim was not contrary to, or an unreasonable application of, Supreme Court precedent. Gonzales is not entitled to relief on this claim.

V.    THE VICTIM TESTIFIED WHILE WEARING HER MILITARY UNIFORM

Gonzales argues that he was denied a fair trial when the state trial court allowed Tarver to testify while wearing her military uniform. Construed broadly, this argument is that the uniform played on the sympathies of the jury, and the jury was not instructed regarding the impact of the uniform on its credibility determination. Gonzales appears to assume that the jury viewed the victim's testimony with undue sympathy and respect because of her military service.

Gonzales has failed to point to any state or federal law that would prevent the victim or any witness from testifying in military attire. I am unable to find any Supreme Court precedent specifically addressing the issue. On habeas review, this court's analysis must focus on due process considerations. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986). Due process standards require this court to consider "whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (citing Ky. Dept. of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). Due process requires, therefore, that the court grant habeas relief only when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland, 785 F.2d at 1293.

Gonzales points to nothing that would indicate fundamental unfairness or prejudice arising from the victim's appearance in her military uniform. He does not challenge her position in the military or her right to wear the uniform. Her use of the rank Airman First Class, a phrase only she uttered, was no different than when the police officers or Dr. Belott used their respective ranks and professional titles. Similar speculative and unfounded arguments of deference to the uniform have been rejected by courts around the country. See Galmore v. Hanks, 85 F.3d 631, 1996 WL 253854, at *3 (7th Cir. 1996) (Table, Text in Westlaw) (rejecting habeas claim of unfair trial under the

Due Process Clause where the victim, an army private, was allowed to testify in full military uniform); Lloyd v. Riley, No. CV-88-2847, 1990 WL 59592, at * (E.D.N.Y. May 3, 1990) (denying habeas claim that allowing the victim, a third class petty sergeant, to testify in his uniform unduly prejudiced the jury); see also, Datsko v. Philadelphia, No. 93-4746, 1995 WL 574364, at *1 (E.D. Pa. Sep. 26, 1995) (denying motion in limine to prohibit police officers from wearing uniform to testify for defense where there was no evidence of unfair prejudice).

As in the cited cases, Gonzales has pointed to nothing that would support his suggestion that the jury's verdict was swayed by Tarver's uniform. I also find no credence in his suggestion that the terrorist attacks on September 11, 2001, somehow impassioned the jury in his case and caused them to give additional credibility to Tarver's testimony given more than five years later. Accord People of Illinois v. Lane, 398 Ill. App.3d 287, 301, 922 N.E.2d 575, 586 (Ill. App. Ct. 2010) (rejecting defendant's claim of added prejudice from allowing a witness to testify in military uniform in light of 9-11 and the war in Iraq, stating "we do not believe that support for the members of the military automatically accords them a higher degree of credibility as witnesses.") In light of the strong evidence presented at trial establishing Gonzales's brutal attack on Tarver, as described previously, there is no basis to find that Gonzales's trial was rendered unfair or that the jury's verdict was swayed by the victim's uniform.

The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. Gonzales is not entitled to relief on this claim.

VI.   DENIAL OF A QUALIFIED INTERPRETER

Gonzales argues that, although neither state nor Supreme Court law recognizes a right to a qualified language interpreter, he was denied due process by the interpreter used at his trial, Tommy Williams. He claims that he was prejudiced by the interpreter's rendition of the proceedings, by his actions the day of trial, and by his state of mind. He suggests that what was told to him by the interpreter was incomprehensible and inaccurate, which casts doubt on his comprehension of his rights at the hearings and proceedings. Specifically, Gonzales argues that the conviction cannot be valid "if" he did not understand the accusations against him.

Gonzales contends that the state trial court did not ascertain where Williams obtained his knowledge of the Spanish language or his other education, training and qualifications to be a fluent language interpreter. He further claims that Williams was never required to take an oath that he would make a true translation in violation of La.

Code Ev. art. 604.[39] Gonzales also claims that he did "object to the sufficiency of Mr. Williams [sic] mercies," but the state trial court was not sympathetic.

Gonzales's counsel raised the qualification issue on direct appeal. The Louisiana Fourth Circuit found no merit to the claim for several reasons. The court first determined that Gonzales failed to point to any error or prejudice in the translations by Williams. The court further found that the record disclosed no objections or problems during the translations, noting that the failure to object prohibited the raising of an error after verdict, citing La. Code Crim. P. art. 841. The order does not clearly impose or rely on the bar; the court simply mentions the rule as the norm. Instead, the court found no merit to the claim with no showing of prejudice and no abuse of discretion by the trial court regarding the translator. The Louisiana Supreme Court denied the related application without stated reasons.

When Gonzales raised his current arguments on post-conviction review, the state trial court denied the claim as meritless without providing supporting reasons. The Fourth Circuit and the Louisiana Supreme Court again denied his subsequent writ applications without additional reasons. As further outlined previously, in connection with its review, the Louisiana Supreme Court ordered the state trial court to address

---

[39]La. Code Ev. 604 provides as follows: "An interpreter is subject to the provisions of this Code relating to qualification as an expert and the administration of an oath or affirmation that he will make a true translation."

Williams' adequacy as an interpreter. In that order, the state trial court spelled out Williams' background as growing up in a Hispanic home, the sources of his education in and experience with the Spanish and English languages, and his lengthy experience as a qualified interpreter in and for the Orleans Parish Criminal District Court.

In this court, Gonzales complains that Williams was not qualified under the guidelines set forth by Louisiana law. Louisiana law provides that the appointment of a foreign language interpreter, based on the defendant's showing of inability to understand the proceedings in English, is within the sound discretion of the trial court. State v. Lopes, 805 So.2d 124, 128 (La. 2001). In exercising this discretion, La. Code Crim. P. art. 25.1 allows the court to appoint an interpreter for a non-English-speaking person who is a principal or witness in a proceeding before a court after consulting with the person and his counsel. State v. Santos, 40 So.3d 167, 172-173 (La. App. 5th Cir. 2010). This article provides that the interpreter must be "competent" to interpret or to translate the proceedings and to interpret or translate the testimony. "However, there is no law in Louisiana that requires interpreters, other than interpreters who translate for the hearing impaired, to be _certified_." (emphasis added) _Id._, 40 So.3d at 173. Gonzales apparently had no right under Louisiana law to have a _certified_ translator.

Nevertheless, to the extent Gonzales argues that the state courts' findings regarding Williams's qualifications violated the requirements of La. Code Ev. art. 604

addressing the qualifications and oath of an interpreter, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir. 1994) (quotation omitted); see also Swarthout v. Cooke, __ U.S. __, 131 S. Ct. 859, 861 (2011) (federal habeas review does not lie for errors of state law). This court's analysis focuses instead on due process considerations, and due process requires that the court grant habeas relief when the errors of the state court make the underlying proceeding fundamentally unfair. Neyland v. Blackburn, 785 F.2d 1283, 1293 (5th Cir. 1986).

As Gonzales concedes, "[t]he United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional one." United States v. Johnson, 248 F.3d 655, 663 (7th Cir. 2001). Instead, due process requires state courts in criminal trials to "proceed consistently with 'that fundamental fairness' which is 'essential to the very concept of justice.'" Dunnigan v. Keane, 137 F.3d 117, 125 (2nd Cir. 1998) (quoting Lisenba v. California, 314 U.S. 219, 236 (1941)). In that regard, the Supreme Court long ago held that the appointment of an interpreter "is a matter largely resting in the discretion of the trial court." Perovich v. United States, 205 U.S. 86, 91 (1907); accord United States v. Johnson, 248 F.3d 655, 663 (7th Cir. 2001); Suarez v. United States, 309 F.2d 709, 712 (5th Cir. 1962).

In this case, as also resolved by the state courts, Gonzales has failed to make a specific showing that Williams was not qualified to interpret in his case. He has pointed to no prejudice to him during the trial in this matter. The limited transcript text he references, relating to choosing a jury or judge trial, does not demonstrate confusion or misinterpretation. Gonzales only speculates that the language may show confusion. Since he was present and does not declare actual confusion with his choice of proceeding before a jury, none is found to have existed.

As noted in the trial court's order, Gonzales has never indicated that he was unable to speak or understand some English. Nevertheless, he did not complain to the trial court during trial about the information he received from or that was translated by Williams. His only complaint at that time about Williams arose from his concern that Williams communicated with a police officer during a break in the trial. As found by the Louisiana Fourth Circuit, this had nothing to do with Williams's interpretation skills and did not disclose error in or an inability to properly interpret.

Gonzales has not shown that his trial was rendered fundamentally unfair under due process standards by the state court's failure to place Williams's credentials on the record or by Williams's services as interpreter. The state courts' denial of relief on this issue was not contrary to Supreme Court law. Gonzales is not entitled to relief on this claim.

VII.  INEFFECTIVE ASSISTANCE OF COUNSEL

Gonzales alleges that his trial counsel was ineffective for failure to object to the victim testifying in her uniform or to seek a qualifying instruction to the jury. He also complains that trial counsel did not ensure that Williams was qualified as an interpreter and given a proper oath. He appears also to argue that appellate counsel was ineffective for failure to present a more complete argument regarding the qualified interpreter issue on appeal. Gonzales raised these arguments on post-conviction review in the state courts, and relief was denied for lack of merit without specified reasons.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). Thus, the question before this court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The standard for judging performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), in which the Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel, requiring petitioner to prove both deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of

reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough under Strickland, however, 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994) (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to

evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal v. Puckett, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001).

On habeas review, the United States Supreme Court has recently clarified that, under Strickland, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 788 (2011). The Harrington Court went on to recognize the high level of deference owed to a state court's findings under Strickland in light of the AEDPA:

> The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The Strickland standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

"A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689). This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690.

26

Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore v. Johnson, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

A.    Trial Counsel

Gonzales argues that his trial counsel provided ineffective assistance because he failed to object when the victim testified in her uniform and failed to request that a qualifying instruction be given to the jury. He suggests that prejudice arising from her appearance in a military uniform was demonstrated later when the state trial court referenced her military status as a consideration in imposing sentence. He also complains that trial counsel did not ensure that Williams was qualified as an interpreter and given a proper oath.

As set forth above, Gonzales failed to establish that his due process rights were violated or that his trial was rendered fundamentally unfair as a result of Tarver's appearance in uniform or Williams's role as interpreter. Having found no constitutional

error in the trial court's decision to allow both, Gonzales has not demonstrated a basis for counsel to have objected to either. Thus, Gonzales has not shown that counsel acted outside the scope of constitutionally sound representation in not objecting to the victim's uniform or Williams's interpreting. The record discloses no prejudice arising from counsel's actions or decision not to lodge these meritless objections. See Green v. Johnson, 160 F.3d 1029, 1037 (5th Cir. 1998), cert. denied, 525 U.S. 1174 (1999) (failure to make a frivolous objection is not deficient performance below an objective level of reasonableness).

Furthermore, Gonzales has not established deficient performance in counsel's decision to not ask for a special jury instruction regarding Tarver's appearance in uniform. Such a charge may well have drawn more attention to the uniform. As discussed previously, other than Tarver introducing herself as Airman First Class, the record does not indicate that anyone else in the presence of the jury emphasized her military title, uniform or role or the distance she traveled to get to trial. Counsel's decision not to ask for a special instruction was clearly within the range of sound trial strategy.

Affording the actions of counsel and the state trial courts due deference, Gonzales has failed to establish that his counsel acted in violation of the Strickland standards. He is not entitled to relief on this claim.

B.    Appellate Counsel

Gonzales also argues that his appellate counsel was ineffective for failure to make a more complete argument regarding Williams's qualifications as an interpreter. He does not explain what more his appellate counsel should have argued. The record demonstrates that counsel argued that the trial court erred in determining for the record that Williams was qualified under state law to effectively interpret for Gonzales. This argument proved meritless based on the Louisiana Fourth Circuit's finding that Gonzales failed to demonstrate prejudice or problems with the interpreter's services.

Construed broadly, Gonzales's arguments may be that appellate counsel should have argued prejudice caused by Williams's interpretation. As discussed above, Gonzales failed to make any showing of prejudice on post-conviction review in the state courts, and he has not done so in this court. Gonzales, therefore, has not shown that any additional meritorious argument existed that could have been raised by counsel on appeal.

The Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not raise every nonfrivolous claim; instead, counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 751–52 (1983). Gonzales has presented no argument that could have fared any better before the state

courts if brought by counsel on direct appeal. See Anderson v. Quarterman, 204 Fed. Appx. 402, 410 (5th Cir. 2006) ("The issues that Anderson argues his counsel should have raised on direct appeal ... lack merit. As such, failure to raise these issues did not prejudice Anderson."); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless); Kossie v. Thaler, 423 Fed. Appx. 434, 437 (5th Cir. 2011) (recognizing the Supreme Court's premise that only when ignored claims are stronger than those raised will the presumption of effectiveness be overcome) (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).

Gonzales has failed to establish that the state courts' denial of relief on this issue was contrary to, or an unreasonable application of, Supreme Court law. He is not entitled to relief on this claim.

## VIII. EXCESSIVE SENTENCE

Gonzales alleges that his sentence was excessive and violated Louisiana law, specifically the provisions of La. Code Crim. P. art. 894.1 and Louisiana Constitution Art. 1, § 20. His argument, construed broadly, is that the unfairness of his 40-year prison sentence is demonstrated by the fact that he was offered a 20-year sentence during plea negotiations. He also argues that the trial court abused its discretion by relying on personal beliefs to increase the sentence, because the victim was in the military and had

to travel a long distance to appear at trial. He also suggests that the court overstated the evidence by declaring that a butcher knife was used in the attack and that the victim would have died in two minutes if she had not arrived at the hospital. Gonzales complains that none of these considerations should have had any bearing on his sentence.

Gonzales raised these arguments on post-conviction review in the state courts, and relief was denied for lack of merit without specifically stated reasons.[40]

As discussed above, the state trial court's compliance with Louisiana's sentencing laws, specifically La. Code Crim. P. art. 894.1 and the state constitution, is not the concern of federal habeas review. Butler v. Cain, 327 Fed. Appx. 455, 457 (5th Cir. 2009). Instead, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987); Turner v. Cain, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence).

If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983).

---

[40]Although Louisiana law does prohibit sentence review on post-conviction, see La. Code Crim. P. art. 930.3 and State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996), this procedural bar was not utilized or relied upon by the state courts. The State's argument with regard to the imposition or acknowledgment of the bar in this court is meritless.

"[W]hen a threshold comparison of the crime committed to the sentence imposed leads to an inference of 'gross disproportionality,'" a court then considers (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. Smallwood v. Johnson, 73 F.3d 1343, 1346-47 (5th Cir. 1996); McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992).

If the sentence is not "grossly disproportionate," however, in the first instance, the inquiry is finished. United States v. Gonzales, 121 F.3d 928 (5th Cir.1997), cert. denied, 522 U.S. 1063 (1998). As the Supreme Court has noted, outside the context of capital punishment, successful proportionality challenges are "exceedingly rare", and constitutional violations are sustained in only "extreme" or "extraordinary" cases. Ewing, 538 U.S. at 23-30 (citations omitted); Lockyer v. Andrade, 538 U.S. 63 (2003).

Because second degree murder carries a mandatory life sentence in Louisiana, Gonzales faced a penalty range for attempted second degree murder of imprisonment at hard labor for not less than 10 nor more than 50 years without benefit of parole, probation, or suspension of sentence. La. Rev. Stat. Ann. §§14:27(D)(1)(a), 14:30.1. Gonzales's 40 year prison sentence was clearly within that range.

This sentence also was actually less than many sentences imposed by Louisiana courts for similar crimes leading to convictions for attempted second degree murder. State v. Landry, No. 2009 WL 368612, at *1 (La. App. 1st Cir. Feb. 13, 2009) (50 years

for life-threatening burns to girlfriend); State v. Warren, 2 So.3d 523 (La. App. 2d Cir. 2008) (50 years after causing life-threatening and permanently crippling injuries to girlfriend after intentionally crashing his car to cause her injury to prevent her from dating other men); State v. Darnell, 988 So.2d 870 (La. App. 2d Cir. 2008) (50 years for shooting attack on ex-girlfriend); State v. Williams, 960 So.2d 1199 (La. App. 2d Cir. 2007) (50 years for planned shooting attack on ex-girlfriend). The fact that he was offered a lower sentence during plea negotiations, which he rejected, is not relevant to the proportionality analysis.

Gonzales has not shown that his sentence was grossly disproportionate or unconstitutionally excessive in light of the crime for which he was convicted. It appears that the sentence was entirely appropriate given the savagery of the attack, its surrounding circumstances and the life-threatening nature of the injuries Gonzales inflicted. The state courts' denial of relief on this issue was not contrary to established Supreme Court case law, nor was it an unreasonable application of Supreme Court precedent. Gonzales is not entitled to relief on this claim.

## **RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that the petition of Genaro Gonzales for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this   21st   day of November, 2011.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.